**WRIGHT v. UNITED STATES.**
No. 11872.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 26, 1954.

Decided July 15, 1954.

Petition for Rehearing Denied
Sept. 30, 1954.

Mr. James J. Laughlin, Washington, D. C., with whom Mr. Albert J. Ahern, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Alfred Hantman, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PRETTYMAN and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Eddie E. Wright, indicted for assault with intent to kill, was convicted of the included lesser offense of assault with a dangerous weapon. He appeals from the judgment and from the order denying his motion for a new trial. The sole ground urged for reversal is that the question whether he was insane when he shot and wounded his victim should have been, and was not, submitted to the jury.

The contention makes it necessary to examine the evidence somewhat in detail because, as this court said in

the Tatum case,[1] upon which Wright relies,

"＊ ＊ ＊ [T]he function of the trial court in regard to the issue of sanity is to determine whether that issue is brought into the case by evidence. If it is, then it should be submitted to the jury with instructions that if the jury has a reasonable doubt of the defendant's sanity, there must be an acquittal."

Early in the evening of November 7, 1952, Wright drank about a half-pint of whiskey and then, having obtained another half-pint, went to the apartment of George Bowers, where he joined a drinking bout which was already in progress. When the common supply of liquor ran low, Wright went to a nearby store and bought a fifth of a gallon, which he took back to the apartment. After some singing and dancing, a drunken altercation developed, in the course of which George Bowers and his brother Harry pinned Wright to the floor. He said one of them struck him on the head with a bottle. At that juncture the janitor arrived to restore order and, when he forced the brothers to release Wright, the latter arose from the floor and began shooting. He pursued George Bowers down the hall and steps and shot him three times during the chase. When the police arrived he fired at them and prevented their entry until re-enforcements came.

The officer who arrested Wright found him sitting at a telephone in the living room of the apartment. A search revealed he had twenty rounds of .32 calibre ammunition in his pocket. The officer's testimony concerning the conversation between them indicated Wright was quite rational. He intelligently identified himself and told the officer one of two .32 calibre revolvers found in the kitchen looked like his, which he said was in his automobile then parked in front of the apartment building. He described the car and the officer im-mediately searched it but found no weapon. When asked about the shooting, he said he knew nothing of it. Wright testified that the last thing he remembered was being hit on the head, but added that his recollection of events before that was not clear, saying, "I was under intoxicating whiskey, and I wouldn't say for sure everything is clear ＊ ＊ ＊."

No psychiatric evidence was introduced at the trial, no witness mentioned any irrational conduct on the part of the defendant, and none testified to any incident or circumstance indicating that Wright was mentally unstable or disturbed on the evening in question. Wright argues, however, that the issue of sanity was brought into the case by his testimony that just before the shooting he was struck on the head with a bottle and remembered nothing thereafter until some hours later he realized he was in a hospital. This statement, and the testimony of the arresting officer that Wright told him he knew nothing of the shooting, are relied upon as raising an issue as to his sanity which should have been submitted to the jury.

In the Tatum case, as here, the defendant maintained he did not remember committing the crime. But there ends the similarity between that case and this. Three witnesses in the Tatum case, one of them a physician, testified the defendant seemed abnormal, or "in a trance." There was testimony that Tatum was kept for some time in a special wing of the jail maintained for disturbed prisoners and that he was several days in the psychiatric department of a hospital. The trial judge agreed with the prosecuting attorney when the latter said he thought he had better call psychiatrists to testify, as "There is a possibility the jury might think there is something wrong mentally." Two psychiatrists called by the government said Tatum was of sound mind at the time the crime was committed and at the time

1. Tatum v. United States, 1951, 88 U.S. App.D.C. 386, 390, 190 F.2d 612, 616.

of examination and one of them said he was malingering. Both said he had not suffered from alcoholic amnesia. In those circumstances this court decided that despite the testimony of the experts the evidence raised an issue as to Tatum's sanity which should have gone to the jury.

In the present case, as we have said, there was no evidence that Wright seemed abnormal. He called no psychiatric witnesses. And his counsel agreed with the court that "he didn't put in any evidence" to warrant an instruction on the issue of insanity. Clearly, in these circumstances, there was no reason for the prosecution to call psychiatric witnesses. Wright himself testified that he suffered from alcoholic amnesia, as he said he was "under intoxicating whiskey" and was not clear as to what happened even before he was struck on the head.

■ The issue of sanity is not raised by the mere statement of a defendant that he does not remember what he did when he was drunk. The blow on the head did not impair his physical activity and seems to have done no more than to dispel the alcoholic fumes so that, even in the heat of pursuit, his marksmanship was quite accurate, and so that he appeared rational to the officer who arrested him soon thereafter. The court's charge covered the effect of voluntary drunkenness, which doubtless caused the jury to find Wright guilty of the lesser offense, and even gave him the benefit of an instruction on self defense.

■■ In support of Wright's motion for a new trial, psychiatric evidence was introduced based entirely on the history given the experts by the defendant. They were unable to say whether the amnesia he claimed to have suffered was due to a blow on the head or to drunkenness. The denial of a motion for a new trial ordinarily is not appealable unless the motion was based on newly discovered evidence. Hamilton v. United States, 1944, 78 U.S.App.D.C. 316, 140 F.2d 679. The evidence in this case of an alleged

psychiatric condition was not newly discovered and does not convince us that in a new trial acquittal would probably result. Compare Saunders v. United States, 1952, 91 U.S.App.D.C. 90, 197 F. 2d 685.

Affirmed.